```
               IN THE UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF VIRGINIA

                        Alexandria Division

                                     )
PATRICK A. LABRIOLA, et al.,         )
                                     )
     Plaintiffs,                     )
                                     )
        v.                           )      1:08cv893 (JCC)
                                     )
                                     )
SOUTHEAST MILK, INC.,                )
                                     )
     Defendant.                      )
                                     )
```

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendant Southeast Milk Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction.  For the following reasons, the Court will grant the motion.

### I. Background

The undisputed facts are as follows.  Plaintiff Patrick Labriola (Labriola) is a resident of the Commonwealth of Virginia.  Plaintiff Christopher Burgess (Burgess) is a resident of the State of Maryland.  Defendant Southeast Milk, Inc. (SMI) is a corporation organized under the laws of the State of Florida; its principal place of business is in Belleview, Florida.

In October 2004, SMI and Plaintiffs, among others, agreed to participate and invest in an entity that became known as Flagship Atlanta Dairy, LLC (Flagship).  Flagship is a limited

1

liability company organized under the laws of the State of Delaware with a principal place of business in Atlanta, Georgia. From May 9, 2005 to June 16, 2006, Labriola was employed as President and Chief Executive Officer (CEO) of Flagship; Burgess served as its Executive Vice President and Chief Financial Officer (CFO) during the same time period.

The relationship between Plaintiffs and SMI deteriorated and the parties agreed to separate. To facilitate their departure, Plaintiffs entered into two agreements with Flagship. In the first, Flagship agreed to purchase the Flagship stock owned by Plaintiffs for $700,000 ($350,000 to each Plaintiff) (Repurchase Agreement). Flagship contracted to make quarterly payments of $26,923.08 to each Plaintiff from June 22, 2006 to June 22, 2009. The second agreement was a two-year contract for consulting services that Plaintiffs would provide to Flagship (Consulting Agreement). Both agreements are governed by Georgia law.

Plaintiffs were concerned about Flagship's ability to make these payments and requested that SMI guarantee Flagship's obligations under these two agreements. SMI agreed to do so and entered into guaranty agreements with Plaintiffs (Guaranties). The Guaranties, dated June 18, 2006, incorporate the Repurchase Agreement and Consulting Agreement by reference, but contain no provision for governing law.

Each Plaintiff received one payment of $26,923.08 in July 2006. On November 17, 2006, Flagship refused to make any further payments under the Repurchase Agreements. Plaintiffs filed a suit for breach of contract in Delaware Superior Court, and moved for summary judgment on August 22, 2007. This motion was withdrawn shortly after Flagship filed its opposition.

At some point, Plaintiffs obtained new counsel, who filed the current action in the Circuit Court for the County of Fairfax as Case No. 2008-9334 on July 22, 2008. Appearing specially, Defendant filed a Notice of Removal in the United States District Court for the Eastern District of Virginia premised on diversity jurisdiction. Defendant filed a Motion to Dismiss for Lack of Personal Jurisdiction on September 10, 2008. Plaintiff replied on October 1, 2008. This matter is currently before the Court.

## II. Standard of Review

Federal Rule of Civil Procedure 12(b)(2) permits dismissal of an action when the Court lacks personal jurisdiction over the parties. The Court must apply the relevant state statute to determine whether the court has personal jurisdiction over a defendant. Fed. R. Civ. P. 4(e)-(f). In Virginia, to establish personal jurisdiction over a non-resident, the Court must consider first whether jurisdiction is authorized by Virginia law, and then whether such minimum contacts with the

3

forum exist such that the exercise of personal jurisdiction is consistent with traditional notions of fair play and substantial justice. *See Ellicott Mach. Corp. v. John Holland Party Ltd.*, 995 F.2d 474, 477 (4th Cir. 1993); *Blue Ridge Bank v. Veribanc, Inc.*, 755 F.2d 371, 373 (4th Cir. 1985). Virginia's long-arm statute extends personal jurisdiction to the fullest extent permitted by due process. *See English & Smith v. Metzger*, 901 F.2d 36, 38 (4th Cir. 1990). It may, however, be possible for the contacts of a non-resident defendant to satisfy due process but not meet the specific grasp of Virginia's more specific long-arm statute provisions. *See DeSantis v. Hafner Creations, Inc.*, 949 F.Supp. 419, 423 (E.D. Va. 1996). As always, the plaintiff bears the burden of demonstrating personal jurisdiction by a preponderance of the evidence once its existence is questioned by the defendant. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).

However, when the district court decides a pretrial personal jurisdiction dismissal motion without an evidentiary hearing, the plaintiff need prove only a *prima facie* case of personal jurisdiction. *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993); *Combs*, 886 F.2d at 676. In deciding whether the plaintiff has proved a *prima facie* case, the district court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor.

4

*Combs*, 886 F.2d at 676; *Wolf v. Richmond County Hosp. Auth.*, 745 F.2d 904, 908 (4th Cir. 1984), *cert. denied*, 474 U.S. 826 (1985).

### III. Analysis

In the jurisdictional portion of the Complaint, Plaintiffs allege that the "material events giving rise to the claims took place in Fairfax County, Virginia." Compl. at 1. They assert that "[t]he Court may exercise personal jurisdiction over the Defendant pursuant to Virginia Code Ann. § 8.01-328.1" because "during relevant time periods the parties were transacting business in the Commonwealth of Virginia and the Defendant entered into a contract with a Plaintiff, a Virginia Resident, in Virginia." *Id.* at 2. Defendant argues that Plaintiffs have not pled sufficient facts to establish the Court's jurisdiction.

**A.    Personal Jurisdiction Under Virginia Law**

Virginia Code Ann. § 8.01-328.1, cited in the Complaint, provides 10 types of contact with Virginia that may result in personal jurisdiction in the Virginia courts. Plaintiffs' Complaint claimed jurisdiction under this section generally, without referring to a specific sub-section. However, in response to Defendant's Motion to Dismiss, Plaintiffs rely on § 8.01-328.1(A)(1), which provides that "[a] court may exercise personal jurisdiction over a person . . . as to a cause of action arising from the person's:  Transacting any business in this

5

Commonwealth." Pls.' Mem. in Opp'n at 9. Given that Plaintiffs do not reference any other subsection of § 8.01-328.1, the Court will evaluate this Motion to Dismiss under the "transacting any business" provision.

Defendant notes that subsection (C) of § 8.01-328.1 requires that "[w]hen jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him." *See Va. Beach v. Roanoke River Basin Ass'n*, 776 F.2d 484 (4th Cir. 1985). Based on this, Defendant argues that § 8.01-328.1(A)(1) does not confer personal jurisdiction over it because Plaintiffs' claim does not "arise from" any business transactions by Defendant in Virginia. Def.'s Mot. to Dismiss at 11 (citing Ex. 1 at ¶¶ 8-12).

Defendant asserts that the Guaranties do not constitute a "transaction" because the mere execution of a guaranty or a single contract with a Virginia resident "does not invariably subject one to personal jurisdiction in a foreign forum;" instead, the Court must analyze "the nature and level of [the guarantor's] contacts with Virginia." Def.'s Mot. to Dismiss at 12 (quoting *State Bank of Alleghenies v. Hudnall*, 62 F.3d 1415, *2 (Table) (4th Cir. 1995)). Further, Defendant submits that, in order to satisfy Virginia's long-arm statute, a "substantial" part of the negotiations of the relevant contract must be

6

"initiated or consummated in Virginia." Def.'s Mot. to Dismiss at 14-15 (citing *Prod. Group Int'l, Inc. v. Goldman*, 337 F. Supp. 2d 788 (E.D. Va. 2004)). Defendant argues that the negotiation of the Guaranties do not satisfy this standard. To support this argument, Defendant relies on the facts provided by the Affidavit of Calvin Covington (Covington), SMI's Chief Executive Officer from June 1, 2000 to the present.

Covington testifies that SMI has no physical or official presence in Virginia and that it operates only a passive website. Affidavit of Calvin Covington (Def.'s Aff.) at ¶ 4. He states that, at the time that the parties executed the Guaranties, SMI did not market, solicit, sell, or distribute any products in Virginia. Beginning in November 2006, SMI began working with the Cobblestone Cooperative, an organization of nine Virginia and six North Carolina dairy farmers. The Cobblestone Cooperative comprises five percent of SMI's marketing volume and less than four percent ($24 million) of its total revenue.

With regard to the negotiation of the Guaranties, Mr. Covington states that negotiations did not take place in Virginia, but rather in Florida, Maryland, and Georgia.[1] The parties to the negotiation were SMI's attorneys, located in

---

[1] In his own affidavit, Labriola asserts that Covington has no direct knowledge of these negotiations because he was on vacation at the time and SMI's attorneys handled the negotiations. ¶ 14. The Court notes that Labriola appears to agree with Covington's factual assertions about the negotiations and to dispute only the legal significance of these facts.

7

Orlando, and Plaintiffs' attorneys, then located in Baltimore. The first drafts of the Guaranties were created in Florida and Georgia and presented to Plaintiffs in Georgia. There, all parties sufficiently agreed to the terms of the Guaranties to permit them to proceed with an official announcement of Plaintiffs' departure from Flagship. All later drafts were e-mailed between the parties' respective counsel and Plaintiffs' e-mail accounts at Flagship, which are based on a server located in Atlanta. Final versions of the Guaranties were also sent to Plaintiffs' counsel in Baltimore.

Defendant also argues that the Guaranties did not contemplate Virginia as a place of formation, execution, or performance. They were written on SMI's letterhead, which provides the company's Florida address. To accept the Guaranties, Plaintiffs were required to execute the documents and return them to SMI in Florida. Further, the Guaranties secured "the contractual obligations of a Delaware entity doing business in Atlanta, Georgia," not those of a Virginia resident or business. Def.'s Mot. to Dismiss at 14. The specific contracts that the Guaranties secured, the Repurchase Agreement and the Consulting Agreement, are specifically governed by Georgia law. Defendant also notes that it did not initiate the Guaranties, did not ask Plaintiffs about the status of the Guaranties, and did not provide proprietary information in support of the Guaranties.

Plaintiffs respond with the affidavit by Labriola, who testifies that he has been a resident of Virginia since 1975 except for a two-year period from 1993-1995, when he was a resident of Minnesota. Affidavit of Patrick A. Labriola (Pls.' Aff.) at ¶ 2. Throughout his relationship with SMI and Flagship, he was a Virginia resident, a fact known to Mr. Covington from the first day they met, July 9, 2003. *Id.* at ¶ 6. Labriola asserts that Covington often telephoned him at his Virginia office. He also states that, while employed by Flagship, he commuted between his home office in Virginia and Flagship's offices in Atlanta, working in Georgia only Tuesday through Friday. *Id.* at ¶ 11. Labriola attaches 2 e-mails as examples of work performed in Virginia for the benefit of Flagship: e-mails that were "distributed directly to all of Board of Managers [sic] of Flagship." *Id.* at ¶ 11 (citing Ex. B, C). The Court notes, however, that these e-mails do not show whether they were sent from Labriola's personal e-mail account or his Flagship e-mail account. They bear no markings indicating to the Court, or to Flagship's Board of Managers, that they were sent from Labriola's office in Virginia. Further, they relate to Labriola's dealings with Flagship, not Defendant SMI.

With regard to the negotiation of the Guaranties, Labriola testifies that he "insisted upon a guarantee from SMI" of the payments owed to him under his agreements with Flagship.

Pls.' Aff. at ¶ 11. He states that he was located in Virginia while the Guaranties were negotiated, except for a two-hour long in-person negotiation session held in Atlanta. *Id.* at ¶ 14. Labriola's affidavit appears to agree with Covington's affidavit with respect to the locations of the negotiating parties, but clarifies that Labriola was in Virginia during the exchange of later drafts of the Guaranties. *Id.* at ¶¶ 15, 16. It also states that Labriola received the final draft of the Guaranty while he was at his home in Virginia. *Id.* This version was sent by his attorney, then located in Baltimore, to both Labriola's Flagship and personal e-mail accounts. Pls.' Mem. in Opp'n at Ex. J, K. Labriola signed the Guaranty and returned it to his attorney by means of his personal e-mail account. *Id.* Finally, Labriola testifies that the one payment he received from Flagship under the Repurchase Agreement was mailed to his office in Virginia. Pls.' Aff. at ¶ 17.

The Court notes that Plaintiffs pleaded personal jurisdiction under Va. Code Ann. § 8.01-328.1(A)(1), not the general jurisdictional provision of Virginia's long-arm statute, Va. Code Ann. § 8.01-330, which provides for personal jurisdiction "to the extent permissible under the Due Process clause." Personal jurisdiction under § 8.01-328.1 is limited to causes of action arising from the alleged "transactions of business in this Commonwealth." Va. Code Ann. § 8.01-328.1(C);

*Roanoke River Basin*, 776 F.2d at 484.  Thus, the Court will only analyze Defendant's contacts with Virginia that led to Plaintiffs' cause of action.[2]

Virginia's long-arm statute is a "single act" statute, meaning that a single act of business can suffice to confer personal jurisdiction over defendants, provided that the relevant conduct is "significant" and demonstrates "purposeful activity" in Virginia.  *Prod. Group Int'l, Inc. v. Goldman*, 337 F. Supp. 2d 788, 793 (E.D. Va. 2004) (citing *John G. Kolbe, Inc. v. Chromodern Chair Co., Inc.*, 180 S.E.2d 664, 667 (Va. 1971)). However, "merely entering into a contract with a resident party will not subject a nonresident defendant to personal jurisdiction . . . unless some substantial part of contractual formation or performance occurs in Virginia."  *Id.* at 793-94.

Based on an evaluation of the facts set forth above, the Court finds that no "substantial part" of the negotiation, formation, or performance of the Guaranties occurred in Virginia. The Guaranties were negotiated in-person in Atlanta and then via e-mails between residents of Florida, Georgia, and Maryland.  No meetings or negotiations were held in Virginia.  E-mail and telephone communications regarding the Guaranties occurred after Labriola returned to Virginia, but they appear to have been

---

[2] Under this analysis, Defendant's other actions in Virginia, namely its original contact with Labriola and its ongoing involvement with the Cobblestone Cooperative, are not relevant.

11

between Plaintiffs' and Defendant's lawyers, or between Labriola and his own attorney, not between Labriola and Defendant. The majority of the e-mails submitted to the Court were sent to Labriola's Flagship e-mail address, which is based in Georgia, and they were addressed to Flagship, not Defendant.

Finally, even were the Court to assume that these telephone and e-mail communications show contact with Virginia, "mere electronic communications in furtherance of a transaction are generally insufficient to form a basis for personal jurisdiction." *Consulting Eng'rs, Inc. v. Geometric Software Solutions*, 2007 WL 10072010 at *4-5 (E.D. Va. April 3, 2007); *see also Superfos Invs., Ltd. v. FirstMiss Fertilizer, Inc.*, 774 F. Supp 393, 397-98 (E.D. Va. 1991); *Unidyne Corp. v. Aerolineas Argentinas*, 590 F. Supp. 391, 396 (E.D. Va. 1984) (holding that telephone calls, telex messages and letters are insufficient basis for in personam jurisdiction).

Plaintiffs also assert that Labriola's act of signing the Guaranty while physically located in Virginia serves as a basis for jurisdiction. However, personal jurisdiction requires that Defendant take action directed at the forum in "more than a random, fortuitous, or attenuated way." *Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners,* 229 F.3d 448, 451 (4th Cir. 2000). In undertaking the Guaranties, Defendant was merely part-owner of a Georgia LLC acting to wrap up business

with the LLC's former employee. That employee happened to return to Virginia full-time because he was no longer employed in Georgia. Thus, it can hardly be said that Defendant directed any actions at Virginia, much less that these actions were "significant" and "purposeful," as explained in *Production Group International*. 337 F. Supp. 2d at 793.

The Court finds that Defendant's Guaranty of Flagship's contractual duties "was not an invocation of the benefits and protections of Virginia law." *Roanoke River Basin Ass'n*, 776 F.2d at 488. Defendant "did not select Virginia as a site for the [Guaranties' performance]." *Id.* Defendant simply responded to Plaintiffs' requests to secure Flagship's obligations. *See id.* (finding that participation in hearings in Virginia did not invoke the benefits and protections of Virginia law because participants did not select Virginia as the site, but simply responded to and appeared at Plaintiff's chosen location). Although the Plaintiff need only make a *prima facie* showing of personal jurisdiction over the Defendant at this stage, the Court finds that it has not satisfied this burden. This Court does not have personal jurisdiction over Defendant.

    B.    <u>Personal Jurisdiction under the Fourteenth Amendment to the United States Constitution</u>

Because the Court finds that it does not have personal jurisdiction over Defendant under the Virginia Code, it need not

13

address whether the exercise of personal jurisdiction over Defendant would violate due process.

### V. Conclusion

For these reasons, the Court will grant Defendant's motion to dismiss.

An appropriate Order will issue.

October 21, 2008                      /s/
Alexandria, Virginia               James C. Cacheris
                                   UNITED STATES DISTRICT COURT JUDGE